**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Team 44 Restaurants LLC, et al., | No. CV-21-00404-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| American Insurance Company, et al., | |
| Defendants. | |

Pending before the Court are two Motions to Dismiss filed by Defendant Greenwich Insurance Company ("Greenwich") (Doc. 11) and Defendant American Insurance Company ("American") (Doc. 12).[1] Plaintiffs filed a Consolidated Opposition to Defendants' Motions to Dismiss (Doc. 25). Greenwich and American filed Replies (Docs. 28; 29). For the following reasons, the Court grants the Motions.

**I.  Background**[2]

This case is one of hundreds of cases brought by businesses across the country who seek insurance coverage for *lost access to or use of* their property as a result of COVID-19 lockdown measures. *See e.g.*, *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, 2021 WL 857361 (D. Ariz. Mar. 8, 2021); *KLOS Enterprises LLC v. Cincinnati Ins. Co.*, 2021 WL

---

[1] American requested oral argument on this matter. (Docs. 12; 29). The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the request for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The Court will assume the Complaint's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

4304010 (Ariz. Super. Ct. Feb. 11, 2021).  The central issue to this and hundreds of other cases is the interpretation of what constitutes "direct physical loss of or damage to" an insured property.  This phrase's meaning has been exhaustively litigated since well before the pandemic, and yet insurance companies consistently fail to define what it means in insurance policies across the country.

Here, the Plaintiffs are restaurants from Arizona, Illinois, and Texas, and they are owned and operated by Plaintiff Team 44 Restaurants ("Team 44").  (Doc. 1-4 at ¶ 26).  In 2019 Team 44 purchased two "all risks" insurance policies (the "Policies") from American and Greenwich to protect its "businesses from interruption and other perils."  (*Id.* at ¶¶ 28, 31–32, 36, 46, 49–50, 54).  The Policies, like so many others, provide coverage for "direct physical loss of or damage to" the restaurants.  (Docs. 1-5 at 33; 1-11 at 52).

Because of the COVID-19 pandemic, which began in late 2019, Plaintiffs were not able to access or use part of their buildings.  Texas' lockdown measures only allowed Team 44's restaurant to provide "curbside" dining, and when indoor dining eventually returned, Texas limited restaurant capacity to twenty five percent.  (Doc. 1-4 at ¶¶ 65–67).  Arizona also limited dining in the beginning days of the pandemic to "curbside/to-go" and eventually reopened indoor dining at fifty percent capacity.  (*Id.* at ¶¶ 76–81).  In Illinois, on-site dining was prohibited, but indoor dining was eventually allowed, again, with a limited capacity.  (*Id.* at ¶¶ 82–93).

In April 2020, Team 44 filed claims with both Greenwich and American for "business losses and extra expenses" resulting from the lockdown measures.  (*Id.* at ¶¶ 69, 94).  Greenwich outright denied the claim.  (*Id.* at ¶ 72).  After hearing no response from American for at least nine months about the status of its claim, Team 44 considers the claim denied.  (*Id.* at ¶ 109).

This matter was originally filed in state court, and Defendants removed it under this Court's diversity jurisdiction.  (Doc. 1 at 2).  The Complaint brings four Claims for relief.  The First and Second Claims seek a declaratory judgment against Greenwich and American stating that Team 44's damages for the loss of access to or use of their restaurants are

covered under the Polices. (Doc. 1-4 at ¶¶ 145, 181). The Third and Fourth Claims allege Greenwich and American breached the Policies by denying coverage. (*Id.* at ¶¶ 189, 198). Defendants argue no such coverage exists under the Policies, and they move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

265, 286 (1986)).

## III. Discussion

As noted above, the parties request that the Court interpret what it means for Team 44's restaurants to incur "direct physical loss of or damage to." This phrase arises in both American and Greenwich's "Coverage" sections of their "Building and Personal Property Coverage Form[s]." (Docs. 1-5 at 33; 1-11 at 52). The language, which is identical in both Policies, says the following:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations cause by or resulting from any Covered Cause of Loss.

(*Id.*) The phrase, "direct physical loss of or damage," is infamously undefined in insurance policies. There are hundreds of cases asking what this phrase means. And it is plain to see that out of these hundreds of cases, nearly every court comes to the same conclusion: it means the policies only cover actual physical damage to the property.

Every Arizona court to reach the question agrees. *B St. Grill & Bar LLC*, 2021 WL 857361, at *5 (finding that coverage for direct physical loss "requires actual physical damage to the covered premises as a prerequisite of coverage"); *White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.*, 2015 WL 1755372, at *2 (D. Ariz. Apr. 17, 2015) (finding that direct physical loss or direct physical damage requires a showing of "actual physical damage to the facility"); *KLOS*, 2021 WL 4304010, at *2 (finding that coverage requires allegations of actual, tangible damage). In addition, the Ninth Circuit recently reached a similar conclusion. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 4486509, at *5 (9th Cir. Oct. 1, 2021) (upholding the district court's interpretation under California law that coverage requires allegations of a physical alteration).

Defendants ask the Court to join this vast majority and dismiss this action. (Docs. 11 at 12; 12 at 6). Team 44 urges the Court to deviate from its sister courts, and now the Ninth Circuit, primarily because earlier courts failed to conduct their own analysis of the policy language involved and, instead, "relied generally on other opinions . . . ." (Doc. 25 at 24). An original interpretation, Team 44 argues, would show direct physical loss or

- 4 -

damage may include the loss of access or use to physical space inside the restaurants because of COVID-19 lockdown measures. (Doc. 25 at 22).

### a. Interpretation of Insurance Policies

Because this matter is before the Court under its diversity jurisdiction, it will interpret the insurance Policies in accordance with Arizona law. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). In Arizona, insurance contract interpretation is a question of law. *Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 515 (Ariz. 2008). To interpret insurance policies, Arizona courts apply "a rule of common sense." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d 727, 733 (Ariz. 1989)). Under this rule, words are given their ordinary meaning and read from the perspective of one who "who is untrained in the law or insurance." *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 966 (Ariz. Ct. App. 2010) (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1135 (Ariz. 1982)). "Insurance policy provisions must be read as a whole, giving meaning to all terms." *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007). In addition, Courts consider "legislative goals, social policy, and [perform an] examination of the transaction as a whole." *Emps. Mut.*, 183 P.3d at 515 (quoting *State Farm*, 782 P.2d at 734). If after a consideration of these factors, the meaning of a policy remains ambiguous, courts construe the policy against the insurer. *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1110 (Ariz. 2008).

### b. Analysis

Team 44 argues a layperson would understand coverage of direct physical loss of or damage to its restaurants "to mean the insured must have been deprived of or unable to use something in the real, material, or bodily world as a result of the governmental orders." (Doc. 25 at 23). Because the COVID-19 lockdown measures prohibited access to "Plaintiffs' physical space in their restaurants," Team 44 argues a layperson would consider a claim for the resulting damage to be within the Policies' coverage. (*Id.* at 25).

A few courts have broken from the majority and recognized this as a reasonable

interpretation. *See e.g.*, *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729 (N.D. Ill. 2021) ("[A] reasonable jury can find that the Plaintiffs did suffer a direct 'physical' loss of property on their premises."); *Ungarean, DMD v. CNA*, 2021 WL 1164836 (Pa. Com. Pl. Mar. 25, 2021) ("[I]t is, at the very least, reasonable to interpret the phrase 'direct physical loss of . . . property' to encompass the loss of use of Plaintiff's property due to the spread of COVID-19 absent any actual damage to property[.]"); *North State Deli, LLC v. The Cincinnati Ins. Co.*, No. 20-CVS-02569, 2020 WL 6281507, at *3 (N.C. Super. Ct. Oct. 09, 2020) ("In the context of the Policies, therefore, 'direct physical loss' describes the scenario where businessowners and their employees, customers, vendors, suppliers, and others lose the full range of rights and advantages of using or accessing their business property. This is precisely the loss caused by the Government Orders.").

The principal case Team 44 relies upon is *Cherokee Nation v. Lexington Insurance Co.*, 2021 WL 506271 (Okl. Dist. Ct. Jan. 28, 2021), as it is one of the most emphatic opinions in support of the minority position. There, the court lamented that insurance companies "have utilized the phrase *direct physical loss* for over fifty (50) years and courts have begged carriers to define the phrase to avoid the precise issue before the Court now." 2021 WL 506271, at *3 (original italics). It then conducted an analysis of the policy language and ultimately found the only reasonable interpretation was one that included covering business that closed in response to COVID-19. *Id.* at *4.

The Court acknowledges the *Cherokee Nation* court's frustration that such a highly litigated phrase remains completely undefined in many insurance policies. Had there been more clearly defined entitlements, a great deal of time and expense would have been saved across the country. However, it seems likely that this phrase remains undefined simply because so many courts find that the plain and ordinary meaning of direct physical loss is actual physical damage, not the loss of access or use. *See KLOS*, 2021 WL 4304010, at *1 (quoting *Promotional Headwear International v. Cincinnati Insurance Company*, 2020 WL 7078735, at *6 (D. Kans. Dec. 3, 2020) ("The overwhelming majority of cases to

consider business income claims stemming from COVID-19 with similar policy language hold that 'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself.")).

Ultimately, the Court will join the majority of courts across the country, not only because of the persuasive weight that such a majority carries, but also because of the Court's independent analysis. A layman, reading the "Building and Personal Property Coverage Form" and the insurance company's promise that it "will pay for direct physical loss of or damage to" the property, would understand this promise to mean only actual physical damage to the building and other personal property inside is covered. *See Aztar Corp.*, 224 P.3d at 966 (Arizona courts interpret insurance contracts as layman would). A layman would not read "direct physical loss" and believe that government action temporarily limiting the use of space within the building is a covered loss.

The Court is assured of its interpretation because of an issue that arises if the Court were to adopt Team 44's interpretation that coverage exists when an insured is "deprived of or unable to use something in the real, material, or bodily world as a result of the governmental orders." (Doc. 25 at 23). Such an interpretation would render the Policies' additional "Civil Authority" coverage meaningless. This Civil Authority coverage, as stated in the American Policy's "Additional Coverage" section, states,

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense cause by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, cause by or resulting from any Covered Cause of Loss.

(Doc. 1-11 at 75). The Greenwich Policy similarly states in its "Additional Coverage" section that,

> When a Covered cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises . . . ."

(Doc. 1-6 at 14). If, as Team 44 argues, coverage is generally provided for any instance in which governmental orders deprive the insured of access or use of the building, then the

Civil Authority, which provides coverage for governmental orders depriving access to the building, would be redundant and, therefore, meaningless. But this cannot be. The Court is required to interpret insurance policies in such a way that each provision is given meaning. *Liberty Ins. Underwriters, Inc.* 158 P.3d at 212; *see also Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993) ("A contract must be construed so that every part is given effect, and each section of an agreement must be read in relation to each other to bring harmony, if possible, between all parts of the writing."). Only by interpreting "direct physical loss of or damage to" as meaning actual physical damage can the Court provide meaning to the additional Civil Authority coverage. Because Team 44's proposed definition fails to account for this, the Court is unpersuaded by Team 44's analysis of the Polices' language.

Finally, Team 44 argues that even if they are required to allege a physical alteration, they have done so by alleging they installed plexiglass barriers in their restaurants and creating new outdoor dining areas. (Doc. 25 at 36). The Complaint does allege that these changes were made in one of the Illinois restaurants. (Doc. 1-4 at ¶¶ 111–12). However, the Complaint's Claims do not align with claims of physical alteration. The Claims seek a declaration that the Policies cover loss of access or use to the restaurant and breach of contract claims for denying coverage of damages resulting from the forced business closures. (*Id.* at ¶¶ 149, 185, 191, 198). The Complaint does not adequately explain how the alleged alterations give rise to the specific Claims alleged. Therefore, the Court will dismiss all of the Claims. *See Balistreri*, 901 F.2d at 699.

**IV.   Conclusion**

The Court will grant Defendants' Motions to Dismiss (Docs. 11; 12) and dismiss the Team 44's Complaint. In this event, Team 44 requests leave to amend its pleadings. Generally, courts freely grant leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). But amendment need not be granted when to do so would be futile. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). The Court finds that the Complaint's Claims, to the extent they are predicated on the loss of

access or use theory, are futile and will be dismissed with prejudice. However, the Court finds that a claim based on the physical alteration of Team 44's property may not be futile so long as it can show the alteration constitutes a physical loss or damage. Therefore, the Court will not dismiss this matter with prejudice but will, instead, allow Team 44 thirty days in which to file a motion for leave to file a first amended complaint that must explain how Plaintiffs can state a claim based upon alleged physical alterations. Any motion seeking leave must include a proposed first amended complaint as an attachment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Greenwich Insurance Company's Motion to Dismiss (Doc. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant American Insurance Company's Motion to Dismiss (Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiffs' Claims, to the extent they are predicated on the loss of access or use theory, are futile, and they will be dismissed with prejudice. Plaintiffs may file a motion for leave to file a first amended complaint within thirty (30) days of this Order's entry. Any motion must explain how Plaintiffs may state a claim based upon physical alterations to their property, and a proposed first amended complaint must be attached thereto.

**IT IS FURTHER ORDERED** that if Plaintiffs fail to file a motion for leave to file a first amended complaint within thirty (30) days of this Order's entry, the Clerk of Court shall kindly dismiss this matter with prejudice.

**IT IS FINALLY ORDERED** that discovery in this matter shall be stayed unless and until the Court issues an order granting Plaintiffs leave to file a first amended complaint.

Dated this 12th day of October, 2021.

Honorable Diane J. Humetewa
United States District Judge