**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Team 44 Restaurants LLC, et al., | NO. CV-21-00404-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| American Insurance Company, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion for Leave to Amend Complaint (Doc. 38). Defendant Greenwich Insurance Company ("Greenwich") and Defendant American Insurance Company ("American") filed a Joint Opposition to Motion for Leave to Amend Complaint (Doc. 39).[1] Plaintiffs filed a Reply (Doc. 40). The Motion is ripe. For the following reasons, the Court denies Plaintiffs' Motion.

**I.   Background**[2]

Plaintiff Team 44 Restaurants LLC ("Team 44") owns and operates restaurants in

---

[1] Defendants Greenwich and American requested oral argument on this matter. (Doc. 39). The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the request for oral argument. *See* Fed. R. Civ. P. 78(b) (Court may decide motions without oral hearings); LRCiv 7.2(f) (Same).

[2] The Court will assume the Complaint's factual allegations are true, as is appropriate when evaluating a motion for leave to amend complaint. *See Experimental Eng'g, Inc. v. United Techs. Corp.*, 614 F.2d 1244, 1245 (9th Cir. 1980) ("In considering a motion to dismiss under Rule 12(b)(6), the district court must take as true all facts as alleged by the plaintiff." (citations omitted)).

Arizona, Illinois, and Texas. (Doc. 1-4 at ¶ 26). As alleged in the original Complaint, Team 44 purchased "all risks" business insurance policies (the "Policies") from Defendants American and Greenwich to cover its restaurants from "interruption or other perils." (*Id.* at ¶ 28). The Policies provided for coverage of "direct physical loss or damage to" the restaurants. (*Id.* at ¶¶ 36, 54). The Policies became of particular importance when the COVID-19 pandemic prevented Plaintiffs from accessing part of their covered properties. (*Id.* at ¶¶ 15–19). Plaintiffs allege they suffered physical loss and damage not only from a lack of access to the covered properties, but also because of physical alterations made to the properties as mandated by local COVID-19 protection orders. (*Id.* at ¶¶ 138, 174). Both Defendants denied Plaintiffs' claim for coverage under the Policies, concluding Plaintiffs' covered properties had not suffered physical loss or damage. (*Id.* at ¶¶ 73, 114). Plaintiffs brought claims of Breach of Contract and Declaratory Judgement against both Defendants. (*Id.* at ¶¶ 22–34).

Previously, Defendants each filed a Motion to Dismiss for Failure to State a Claim. (Docs. 12, 11). The Motions argued "COVID-19 related orders are insufficient to establish direct physical loss or damage," and thus Defendants correctly denied coverage because Plaintiffs had not incurred physical loss or damage. (Docs. 11 at 13; 12 at 9). Defendants urged the Court to follow other courts across the country and find that direct physical loss or damage means actual physical damage or loss must have occurred to receive coverage. (Docs. 11 at 10; 12 at 10). Defendants claimed a finding of this nature would render the Plaintiffs' claims futile. (*Id.*) Plaintiffs argued, on the other hand, that a loss of use of the covered property and physical alterations made to the properties because of COVID-19 protocols did constitute physical loss and damage. (Doc. 25 at 30).

The Court ultimately granted Defendants' Motions, finding Plaintiffs' claims based upon "loss of access or use theory" were futile as the Court concluded physical loss or damage required actual loss or damage, not just a loss of use. (Doc. 37 at 9). Applying Arizona law, the Court interpreted physical loss or damage to require actual physical damage as this was the sole definition that gave the Policies meaning. (*Id.* at 8) The Court

1  dismissed Plaintiffs' claims with prejudice, to the extent they were based on the loss of
2  access or use theory. (*Id.* at 9) However, the Court did grant Plaintiffs the opportunity to
3  file a Motion for Leave to Amend Complaint to allow Plaintiffs to clarify how they could
4  "state a claim based upon how the alleged physical alterations resulted in physical loss or
5  damage." (*Id.*)

**II.   Motion for Leave to Amend Complaint**

Plaintiffs filed a Motion for Leave to Amend Compliant and a proposed First Amended Complaint ("FAC") that contains new allegations. The most salient of which concern the existence of Plaintiffs' relationship with an insurance broker (the "Broker"). (Docs. 38 at 7; 38-2). Plaintiffs claim they met with the Broker before and after they entered the Policies and that they relied upon the Broker's representations of the meaning of the Policies. (Doc. 38 at 5–6). Plaintiffs allege the Broker used Defendants' materials to answer Plaintiffs' questions, and, using these materials, the Broker supplied enough information about the Policies to lead Plaintiffs to conclude "there was sufficient coverage for their thriving business." (*Id.*) Plaintiffs add very few other details about the Broker, only alleging the Broker is an independent insurance broker at Heffernan Insurance Brokers. (Doc. 38 at 4). Throughout Plaintiffs' filings, the Broker remains nameless and is unaffiliated with Defendants. (Docs. 38 at 4; 38-1 at 17–18, 22–23).

Plaintiffs allege the Broker never explained the terms in a manner that would be consistent with this Court's previous finding. (Doc. 38-1 at ¶¶ 209, 222). Particularly, Plaintiffs claim the Broker never defined the term physical loss or damage, nor provided any representation that would have led Plaintiffs to reach an alternative definition other than "coverage for partial or total closures of their businesses resulting from an event outside of their control." (Docs. 38 at 10; 38-1 at ¶¶ 74, 107). Plaintiffs fail to articulate what the Broker represented, but they allege that the representation created an expectation. (*Id.*) Plaintiffs argue these new allegations give rise to a viable claim under Arizona's reasonable expectations doctrine. (Doc. 38 at 9).

Additionally, Plaintiffs expand upon their argument that the physical alterations

made to the covered properties because of state, mandated COVID-19 protocols constituted both physical loss and damage. (Doc. 38-1 at ¶¶ 67–70, 88–102, 129). Plaintiffs highlight how they were required to introduce hand sanitizing stations and disposable menus in their Texas locations, enforce social distancing protocols in their Arizona locations, and rearrange tables and install plexiglass in their Illinois restaurants. (*Id.*) These are just a few of the alterations alleged in the FAC. (*Id.*) Plaintiffs use the lists of required protocols to demonstrate how the physical alterations resulted in physical loss or damage by "directly or indirectly limit[ing]" Plaintiffs' "direct physical access to or use of Plaintiffs' real property." (Doc. 38-1 at ¶¶ 85, 131).

### III.     Legal Standard

Courts considering a motion for leave to amend complaint must recognize the presumption in favor of granting leave to amend. Fed. R. Civ. P. 15. For courts in Arizona, and the Ninth Circuit more broadly, the Federal Rule is interpreted with "extreme liberality" in favor of granting the motion. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Courts may deny motions for leave to amend where there is a showing by the opposing party that granting the motion would be futile, cause undue delay, or prejudice the non-moving party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. Allstate Corp.*, 2009 WL 325331, at *3 (Ariz. Ct. App. Feb. 10, 2009) ("Leave to amend . . . is properly denied when amendment would be futile." (citation omitted)). An amended complaint is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (citing *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). Therefore, "[i]n determining whether a proposed amendment is futile. . . courts are generally guided by the same standards used when evaluating a Rule 12(b)(6) motion to dismiss . . ." *Weber v. Allergan Inc.*, 2016 WL 8114210, at *2 (D. Ariz. Feb. 17, 2016).

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim."

*Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). When considering a Rule 12(b)(6) action, courts must consider "all factual allegations in the complaint as true and construe them in "light most favorable to the plaintiffs." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted). A "complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face," and thus "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where Plaintiffs' FAC fails to state a claim, and not just a legal conclusion, Plaintiffs have not overcome Rule 12 (b)(6) and their amended complaint is futile. *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) (citation omitted).

**IV. Analysis**

The Court begins its analysis with whether Plaintiffs' new allegations concerning the Broker sufficiently state a claim under the reasonable expectations doctrine.

**a. Reasonable Expectations Doctrine**

The reasonable expectations doctrine is applicable when an insured party's expectations "have been induced by the making of [a] promise." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984). The doctrine permits parties to seek relief for what was promised in negotiations that may be counter to what was agreed to under an insurance contract. *Id.* at 394 ("We have adopted a rule of law which, in proper circumstances, will relieve the insured from certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them"). Out of concern the doctrine could be abused through an expansive application of the rule, the Arizona Supreme Court narrowed the doctrine. *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277 (Ariz. 1987). In *Gordinier*, the Arizona Supreme Court outlined four possible scenarios in which a claim could arise under the reasonable expectations doctrine, thus limiting when courts could grant relief for what was allegedly promised. *Id.* Arizona courts have since applied these four scenarios to issues where policy terminology is disputed between insurers and the insured. *Id.*; *see, e.g., Cibus*

*LLC v. Eagle W. Ins. Co.*, 2021 WL 1566306, at *4 (D. Ariz. Jan. 21, 2021). The four scenarios are as follows:

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;
>
> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier*, 742 P.2d at 272–73 (internal citations omitted). Plaintiffs argue they satisfy all fours scenarios. (Doc. 40 at 6).

### i. Objective, Reasonable Expectations of the Average Insured

Plaintiffs argue the first *Gordinier* scenario applies because a reasonable insured would have understood the terms physical loss or damage to include loss of access and curtailment of use of the covered premises. (Doc. 38 at 8). Defendants argue Plaintiffs' allegations are contrary to the Court's finding that a "layman reading the 'Building and Personal Property Coverage Form' and the insurance company's promise would [understand the phrase physical loss or damage to] only apply to actual physical damage to the building and other personal property inside." (Docs. 39 at 10; 37 at 7).

The Court has already concluded an average layperson would understand the term physical loss or damage to require actual, physical harm rather than a loss of use or access. (Doc. 37 at 6–7). Since its Order, more courts have also found the average consumer would understand the phrase physical loss or damage in an insurance policy to require actual, physical loss or damage not a loss of use. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 891–892 (9th Cir. 2021) (finding that when read "as a reasonable lay person," physical loss or damage within the meaning of the policy requires "a distinct, demonstrable,

- 6 -

physical alteration to the property . . ." for coverage to apply, as "intangible, incorporeal, and economic losses" are distinguished from "physical" losses) (citing *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 9 Cal.Rptr.3d 701 (2004) and *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Raptr. 3d 27, 38 (Cal. Ct. App. 2010) (internal quotations omitted)); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200 (D. Kan. 2020) ("[T]he overwhelming majority of cases to consider business income claims stemming from COVID-19 with similar policy language hold that 'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself").

Therefore, the Court continues to hold the average layperson would correctly understand coverage for physical loss and damage to require actual physical loss or damage to the property. *See Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883 (S.D.W. Va. 2020) (finding closure of the premises because of COVID-19 closure orders did not constitute physical loss); *Guadiana v. State Farm Fire & Cas. Co.*, 2008 WL 4078767, at *3 (D. Ariz. Sept. 2, 2008) ("If the contractual language is clear, we will afford it its plain and ordinary meaning as written'" (quoting *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 158 P.3d 209, 212 (Ariz. App. 2007)). Scenario one, then, does not apply.

### ii. Full and Adequate Notice

The next scenario applies when an insured has not received full and adequate notice of what the terms to an insurance contract mean. An insurer provides full and adequate notice of a term or provision when the insured has been supplied with the policy, the term in question is stated in plain language, and the provision is easily located in the policy. *Vencor Inc. v. Nat'l States Ins. Co.*, 303 F.3d 1024, 1038 (9th Cir. 2002) (finding, under Arizona law, where "[t]he pertinent language is contained in precisely the location where one would look for it, the basic coverage provision, not in a definitional section, small print addenda, or other out-of-the-way part of the policy" the plaintiff had full and adequate notice); *State Farm Fire & Cas. Co. v. Rocky Sapp*, 2015 WL 632138, at *6 (Ariz. Ct. App.

Feb. 12, 2015) (holding an insured did not receive full and adequate notice because plaintiff did not actually receive the policy).

Plaintiffs argue they did not receive full and adequate notice of Defendants' definition of physical loss or damage. (Docs. 38 at 11; 38-1 at 17, 22–23, 28). Plaintiffs allege the Broker, nor the Policies, provided an actual definition of physical loss or damage. (Doc. 38-1 at ¶¶ 178, 209). Plaintiffs claim Defendants' definition of the physical loss or damage "emasculates" the reason Plaintiffs sought coverage, and they argue that if the Broker had provided the interpretation found by the Court, Plaintiffs would not have purchased the Policies. (Docs. 38 at 10; 38-1 at ¶¶ 78, 111). Defendants argue Plaintiffs received a copy of the policy written in plain language and so had full and adequate notice. (Doc. 39 at 11).

The Court finds Plaintiffs had full and adequate notice. The copies of the Policies provided by Plaintiffs clearly show the term physical loss or damage written in plain language, and the provision is easily located within the Policies. (Docs. 1-5 at 33; 1-11 at 74). Therefore, Plaintiffs have received full and adequate notice of the term physical loss or damage, and the usual definition is implied in such use of the term in the Policies. *See Vencor*, 303 F.3d at 1038.

### iii.   Activity Reasonably Attributed to the Insurer

To make a finding under the third or fourth *Gordinier* scenario, Plaintiffs must allege "some activity which can be reasonably attributable to the insurer." *Vencor Inc.*, 303 F.3d at 1038 (quoting *Gordinier*, 742 P.2d at 284). Both Plaintiffs and Defendants combine the third and fourth scenarios into one analysis, as will the Court. An activity is reasonably attributed to the insurer when an insured's expectations are induced by the insurer's making of a promise. *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 501 F. Supp. 3d 699, 705 (D. Ariz. 2020) (finding under the third or fourth *Gordinier* scenario, plaintiff must demonstrate "that the expectations to be realized are those that 'have been induced by the making of a promise,' as evidenced by prior negotiations or other factors" (quoting *Darner Motor Sales,* 682 P.2d at 406)). An expectation reasonably attributable

to the insurer does not exists where an agent of the insurer, or the insurer itself, fails to make a promise outside of the insurance policy. *See Cibus LLC*, 2021 WL 1566306, at *5 (finding plaintiff's claim that a policy provision drafted by an agent of defendant "is reasonably attributable to the [d]efendant and would create a reasonable expectation of coverage is unavailing").

Plaintiffs allege the Broker's representations of coverage could be "reasonably attributable to the insurer" as the Broker used Defendants' materials to learn about the Policies. (Doc. 38-1 at ¶¶ 76, 109). Plaintiffs conclude then, even if the phrase "direct physical loss" is "not ambiguous to the Court," the Broker's representations would have, and did, lead a reasonable insured to believe they have coverage for all losses incurred due to a lack of physical use. (Docs. 38 at 9; 38-1 at ¶¶ 77, 110, 221). Defendants claim, under both scenarios, Plaintiffs' new allegations regarding representations made by Plaintiffs' own broker cannot be reasonably attributable to the Defendants. (Doc. 39 at 12–13). Defendants argue Plaintiffs have failed to establish how the unidentified Broker is affiliated with the Defendants. (*Id.* at 12).

Defendants' argument is persuasive. Plaintiffs have not identified the Broker by name, state of location, nor which of Defendants' materials the Broker relied upon to make the representations to Plaintiffs. Plaintiffs only allege that the Broker used Defendants' materials to educate him/herself, not that the Broker made a promise to Plaintiffs on behalf of Defendants. Plaintiffs do not claim the Defendants were aware of the Broker's meetings with Plaintiffs nor of the representations the Broker made to Plaintiffs. (Doc. 38-1 at ¶¶ 105–109, 210, 221). The new facts implicating the Broker fail to explain how the Broker's representations are reasonably attributable to the Defendants as Plaintiffs do not allege the Broker was authorized to act on Defendants' behalf. *See, e.g.*, *Sparks*, 647 P.2d at 1140 (explaining, under Arizona law, "[o]nce the insurer authorizes the broker to conduct a certain transaction, the insurer is liable to third persons upon contracts made by the broker"). The Broker and their representations about the Policies remains unaffiliated with Defendants due to insufficient facts alleged about the Broker.

Thus, Plaintiffs' allegations fail to invoke the reasonable expectations doctrine under scenario three or four. *Cibus LLC,* 2021 WL 1566306, at *5 (holding plaintiffs failed bring a meritorious claim under the reasonable expectations doctrine as the agent's actions were not reasonably attributable to defendants).

Because the Court finds that Plaintiff does not satisfy any of the four scenarios, it finds that Plaintiff's FAC fails state a claim that invokes the reasonable expectations doctrine.

### b. Physical Alterations

The Court's prior Order allowed Plaintiffs the opportunity to state a claim demonstrating how the alleged physical alterations Plaintiffs made to the covered properties resulted in physical loss or damage. (Doc. 37 at 9). Throughout the FAC, Plaintiffs allege that governmental orders caused the restaurants to change. (Doc. 38-1 at 16, 19–22). However, Plaintiffs never claim the orders effected actual, physical damage.

Many courts have found that COVID-19, and subsequent protocols, do not constitute physical damage or physical loss to property. *10E, LLC v. Travelers Indem. Co. of Connecticut*, 483 F. Supp. 3d 828, 836 (C.D. Cal. 2020) ("Plaintiff characterizes in-person dining restrictions as 'labeling of the insured property as non-essential.' That 'labeling' surely carries significant social, economic, and legal consequences. But it does not materially alter any of [p]laintiff's property"); *O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co.*, 512 F. Supp. 3d 1019, 1024 (N.D. Cal. 2021) ("contaminated surfaces can be disinfected and cleaned . . . , thereby demonstrating COVID-19 does not cause 'physical alteration' or 'physical change in condition' of property" (citations omitted)). Here, the alleged physical alterations change the ways in which Plaintiffs conduct business but not the covered properties themselves.

Plaintiffs have alleged sufficient facts to show that COVID-19 protocols curtailed their access to the covered premises, but this is not at issue here. Rather, as the Court clearly stated, Plaintiffs were to demonstrate how the physical alterations resulted in actual physical loss or damage, not a loss of use or access. (Doc. 37 at 8–9). Therefore, the Court

finds that Plaintiffs fail to state a claim alleging physical loss or damage to their properties.

## V.     Conclusion

Because Plaintiffs fail to state a claim under the reasonable expectations doctrine or under a theory of physical loss or damage, the Court will deny Plaintiffs' Motion for Leave to Amend Complaint as futile.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion (Doc. 38) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this matter.

Dated this 15th day of February, 2022.

Honorable Diane J. Humetewa
United States District Judge